UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON D. WALLACE,<br><br>Petitioner,<br><br>v.<br><br>JASON JOHNSON, Director, Division of Adult Parole Operations,<br><br>Respondent.[1] | No. 2:23-cv-2667 DJC CSK<br><br>ORDER & FINDINGS & RECOMMENDATIONS |

**I. INTRODUCTION**

    Petitioner is a former state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner challenges his 2022 conviction for three counts of possession of a firearm by a felon (Cal. Penal Code § 29800(a)(1)) and one count of possession of ammunition by a felon (Cal. Penal Code § 30305(a)(1)). Petitioner was sentenced to four years imprisonment. The petition raises one claim: petitioner's statement regarding his place of employment was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966) and should not have been used against petitioner at trial. After carefully considering the record, this

---

[1] Following the filing of the petition, petitioner was released from incarceration and placed on parole. Accordingly, this Court substitutes Jason Johnson, Director, Division of Adult Parole Operations, as the proper respondent. See Rules Governing Section 2254 Cases, Rule 2 (if the petitioner is in custody under a state court judgment, the petition must name as respondent the state court officer who has custody).

1

Court recommends that the petition be denied.

## II.     STANDARDS FOR A WRIT OF HABEAS CORPUS UNDER ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA)

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39-40 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam)).  Nor may it be

used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous") (internal quotations and citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

3

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no

4

reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

## III.   DISCUSSION

### A.   Factual Background

The opinion of the California Court of Appeal on direct appeal contains a factual summary of petitioner's case. After independently reviewing the record, this Court finds this factual summary to be accurate and adopts it below:

> The Bureau of Gambling Control for the California Department of Justice (DOJ) received information regarding an illegal gambling operation at 2408 Sacramento Street in Vallejo, California. Sources referred to the gambling establishment as "the Buy Zone." On December 15, 2021, at about 9:00 a.m., DOJ agents executed a search warrant at the property. Inside the main building on the property, agents found evidence of gambling operations, as well as three females, including Erika Montero, the alleged manager of the operation, and Denise Helmeci.
>
> There was also an outbuilding on the property that was about 50 feet long and 20 feet wide. Agents knocked on the front of the outbuilding and announced they were executing a search warrant. About 45 seconds later, Wallace "stumbled out of a back bedroom area" of the outbuilding. Another person, Elijah Abeyta, came out as well. Upon entry, agents found no other people.

5

> The outbuilding appeared to be converted into a living dwelling, with a small living room area, an area that appeared designed as a bedroom, a bathroom, and a kitchenette. The place was messy, and there were bags of clothes and other items strewn throughout the building. There was old food in the kitchenette. In the rear of the bedroom, there were many bags, primarily containing baby and women's clothes.
>
> On or near a television stand in the front living room area of the outbuilding, agents found the following: (1) a loaded shotgun; (2) an unloaded shotgun; and (3) a lower-receiver for an AR-15 style rifle. The loaded shotgun was behind a rug that had been nailed to the wall next to the television stand. The unloaded shotgun was in the bottom, slightly ajar drawer of the television stand. The lower receiver was in a bag on the top shelf of the television stand. This bag also contained drill bits and screws that could be used to make a rifle, two upper receivers for an AR-15 style rifle, an empty rifle magazine, and 20 live ammunition rounds. Agents found a tactical box in the television stand with drill bits; a jig, which an agent testified could be used to "mill out or drill into the lower receiver of AR-15 style rifles"; various subparts of an AR-15; four boxes of ammunition; and loose ammunition. A plastic bag on the television stand contained six 12-gauge shotgun rounds and a single rifle round. In addition, the rear stock of a rifle was behind the television stand and there were four rifle rounds on a shelf by the front door.
>
> On the same shelf by the front door with the four rifle rounds, the agents found paperwork belonging to Wallace. Agents found "additional paperwork with [ ] Wallace's name listed on it from a grey luggage bag located in that same front living room." Some men's clothing was in the luggage bag. In the bedroom, by "where [one's] head would lie for the bed," agents found envelopes addressed to Wallace with an address of Hopkins Drive in Fairfield. In the same location, agents found an envelope addressed to Darnell Tailor. Also in the outbuilding, agents found medication for Helmeci and paperwork in Montero's name.
>
> Wallace's mother testified that she lived on Hopkins Drive in Fairfield in December 2021, and that Wallace used her address for his mail. He had stayed at her house "off and on maybe a couple days here or there" in the year and a half before the December 2022 trial. However, in December 2021, Wallace told her that he was "living in Vallejo, um, in a shack on Sacramento Street." He also lived with his stepdaughter in Vacaville for a few weeks in December 2021. Wallace told a probation officer that he lived with his mother in Fairfield, and he told both his mother and the probation officer that he worked as a security guard at the Buy Zone.
>
> An amended information charged Wallace with three counts of being a felon in possession of a firearm (§ 29800, sub. (a)(1)) and one count of being a felon in possession of ammunition (§ 30305, subdivision (a)(1)). A jury found Wallace guilty on all counts. The trial court sentenced him to four years in prison, and Wallace filed a timely appeal.

Respondent's Exhibit 8 at 1-4 (ECF No. 17-5 at 93-96).

### B. California Court of Appeal's Opinion

On direct appeal, the California Court of Appeal denied petitioner's Miranda claim for the following reasons:

> The Alleged Miranda Violation
>
> Wallace's second claim is that the court erroneously admitted his statement to a probation officer that he was working at the Buy Zone in violation of his rights under Miranda, supra, 384 U.S. at pages 478–479, which requires that certain admonitions be given before a suspect's statement made during custodial interrogation can be admitted in the prosecution's case-in-chief. The Attorney General counters that Wallace's statement fell within Miranda's booking exception, and, in any event, the error was harmless. We agree with the Attorney General's latter point, so we do not decide whether the booking exception applies.
>
> Any error in admitting the probation officer's testimony as to Wallace's statement about the Buy Zone was not prejudicial. (Chapman v. California (1967) 386 U.S. 18, 24; People v. Elizalde (2015) 61 Cal.4th 523, 542.) Wallace argues that his statement was prejudicial because it was key to establishing that he possessed the prohibited items for his work, his statement was akin to a confession, and the prosecution highlighted his statement in closing argument. But Wallace made the exact same statement to his mother. Wallace's mother testified that Wallace was working as a security guard, and she could not remember the name of the establishment, but it was "a gambling place." She then remembered and said, "It was the Buy Zone." The defense did not attack Wallace's mother's credibility. In closing, the prosecutor argued that Wallace told his mother he was living in a shack on Sacramento Street, and the prosecutor immediately thereafter stated that Wallace had said he was working at the Buy Zone as a security guard. There was no attribution of Wallace's statement as one given solely to the probation officer, and the testimony of both Wallace's mother and the probation officer relayed the exact same information. Moreover, regardless of any testimony as to where he worked, Wallace and his indicia were at the search location when and where the prohibited items were found. Accordingly, any admission of the probation officer's duplicative testimony as to Wallace's place of employment was harmless beyond a reasonable doubt.

Respondent's Exhibit 8 at 7-8 (ECF No. 17-5 at 99-100).

On August 16, 2023, the California Supreme Court denied the petition for review without comment or citation. Respondent's Exhibit 10 at 1 (ECF No. 17-5 at 132). Thus, the opinion of the California Court of Appeal is the last reasoned opinion by a state court addressing petitioner's Miranda claim.

7

### C. Analysis

As discussed above, the California Court of Appeal assumed that petitioner's statement to the probation officer that petitioner worked at the Buy Zone was the product of a custodial interrogation, but concluded that under the Chapman standard, any possible error in admitting the statement "was harmless beyond a reasonable doubt."

The Fifth Amendment privilege against self-incrimination provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." In Miranda, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. In particular, Miranda requires that before questioning a suspect in custody, law enforcement officials must inform the suspect that:

> he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed.

Id. at 444.

Miranda's protections apply only in the context of "custodial interrogations." See Yarborough v. Alvarado, 541 U.S. 652, 661 (2004). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. "Any statements obtained during custodial interrogation conducted in violation of [Miranda's] rules may not be admitted against the accused, at least during the State's case in chief." Fare v. Michael C., 442 U.S. 707, 718 (1979).

"Miranda error does not entitle [petitioner] to habeas relief if the error was harmless[,]" Jones v. Harrington, 829 F.3d 1128, 1142 (9th Cir. 2016); Garcia v. Long, 808 F.3d 771, 781 (9th Cir. 2015), and a "state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." Brown v. Davenport, 596 U.S. 118, 127 (2022); see also Davis v. Ayala, 576 U.S. 257, 269 (2015) ("There is no dispute that the California Supreme Court held that any federal error was harmless beyond a reasonable doubt under Chapman, and this decision

8

undoubtedly constitutes an adjudication of Ayala's constitutional claim 'on the merits.'").

When a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without applying the harmless error test outlined in Brecht v. Abahamson, 507 U.S. 619 (1993) *and* the test prescribed in AEDPA, set forth in 28 U.S.C. § 2254(d).  See Brown v. Davenport, 596 U.S. 118, 122 (2022).  Under Brecht, a habeas petitioner must show that any constitutional error had a "substantial and injurious effect or influence" on the proceedings to be entitled to relief.  507 U.S. at 637-38.  For the following reasons, this Court finds that the California Court of Appeal's harmless error finding was not objectively unreasonable pursuant to 28 U.S.C. § 2254(d).  Therefore, this Court need not apply the harmless error test set forth in Brecht to petitioner's Miranda claim.  See Davenport, 596 U.S. at 134 ("a federal court must *deny* relief to a state habeas petitioner who fails to satisfy this Court's equitable precedents or AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests.") (emphasis in original).[3]

Pursuant to 28 U.S.C. § 2254(d), this Court "may not overturn the [state court's] decision unless that court applied Chapman in an objectively unreasonable manner." Ayala, 576 U.S. at 269 (citation and internal quotation marks omitted); Sansing v. Ryan, 41 F.4th 1039, 1050 (9th Cir. 2022).  A "state-court decision is not unreasonable if fairminded jurists could disagree on [its] correctness." Ayala, 576 U.S. at 269 (citation and internal quotation marks omitted).  "When a Chapman decision is reviewed under AEDPA, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." Id. (citation and internal quotation marks omitted) (emphasis in original).  "[A] state-court decision is not unreasonable if fairminded jurists could disagree on its correctness." Id. (citation and internal quotation marks omitted).  Petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 269-70 (citation and internal quotation marks omitted).

---

[3] In the answer, respondent appears to argue that petitioner's Miranda claim should be denied pursuant to Brecht and AEDPA.  See Answer at 5-6 (ECF No. 17-1 at 9-10).

At petitioner's trial, the probation officer testified that petitioner told her that petitioner worked "full time as a security [sic] at the Buy Zone." 11 Reporter's Transcript ("RT") at 324 (ECF No. 17-4 at 325). Petitioner's mother testified that in December 2021, petitioner was living in a shack on Sacramento Street. 11 RT at 318 (ECF No. 17-4 at 319). Petitioner's mother testified that in December 2021, petitioner worked as a security guard at the Buy Zone. 11 RT at 318 (ECF No. 17-4 at 319). Petitioner did not challenge his mother's credibility or her testimony in this regard. 11 RT at 319-321 (ECF No. 17-4 at 320-22). In closing argument, the prosecutor argued that petitioner told his mother that he was living in a shack on Sacramento Street and working as a security guard there. 12 RT at 371 (ECF No. 17-4 at 372). In his rebuttal closing argument, the prosecutor argued, "Mr. Wallace was the person who told the probation officer that he was working at the Buy Zone as a security guard." 12 RT at 393 (ECF No. 17-4 at 394). Thus, the California Court of Appeal correctly found that there was no attribution of petitioner's statement regarding his employment as one given solely to the probation officer, and the testimony of both petitioner's mother and the probation officer relayed the exact same information. The California Court of Appeal also correctly found that petitioner was at the search location where the firearms and ammunition were found. See 1 RT at 12 at 12-14 (ECF No. 17-4 at 13-15) (during execution of search warrant, petitioner was found in a building containing firearms and ammunition). For the reasons set forth above, this Court finds that the harmless error finding by the California Court of Appeal regarding admission of the probation officer's testimony was not objectively unreasonable. See 28 U.S.C. § 2254(d). Accordingly, petitioner's application for a petition for writ of habeas corpus should be denied.

In the answer, respondent observes that while the state court declined to decide whether petitioner's statement to the probation officer qualified under the "booking exception" to Miranda, respondent reiterates his position that it did. See Answer at p. 4 n. 3 (ECF No. 17-1 at 8). This Court need not address whether petitioner's statement to the probation officer qualified under the "booking exception" to Miranda because petitioner fails to demonstrate that the harmless error finding by the California Court of Appeal regarding admission of the probation officer's testimony was objectively unreasonable.

10

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to substitute Jason Johnson, Director, Division of Adult Parole Operations, as respondent; and

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 22, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Wall2667.157/2